**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RITA C. WORCH,** | **)** | |
| **JOSEPH A. WORCH,** | **)** | |
| **PLAINTIFFS,** | **)** | |
| | **)** | |
| **VS.** | **)** | **CASE NO. 4:05CV1884-HEA** |
| | **)** | |
| **WOLPOFF & ABRAMSON, LLP,** | **)** | |
| **KEVIN S. GRILLION, and** | **)** | |
| **KELLERMAN INVESTIGATIONS, LTD,** | **)** | |
| **DEFENDANTS.** | **)** | |

**BRIEF IN SUPPORT OF MOTION TO COMPEL**

This case arises under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692. To satisfy Plaintiffs' burden of proof, Plaintiffs requested certain information, some of which is in Defendant's exclusive control, in order to prove the existence of the violations, "the frequency and persistence of non-compliance" and "the extent to which the noncompliance was intentional." 15 U.S.C. §1692k(b)(1).

Plaintiffs have filed a Motion to Compel respectfully requesting this Honorable Court to order Wolpoff & Abramson, LLP to produce proper and complete responses to Plaintiffs' discovery and to strike the numerous objections asserted by Wolpoff to these discovery devices.

**Scope of Discovery**

The Federal Rules of Civil Procedure, Rule 26(b)(1), defines the general scope of discovery as follows:

> "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information

> sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

"The key phrase in this definition – 'relevant to the subject matter involved in the pending action'- has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) citing Hickman v. Taylor, 329 U.S. 495 (1947).

**Rule 26 Initial Disclosures**

Defendant's refusal to produce began with its Rule 26(a)(1) initial disclosures. In response to Rule 26(a)(1)(B), Defendant merely stated:

> All business records known to Defendant related to this matter are located at 702 King Farm Boulevard, Rockville, Maryland 20850. These documents are made available to Plaintiff for inspection and copying at a mutually agreeable time.

The documents are necessary not only to the Plaintiffs, but to counsel for the Defendant. Without them, counsel for Defendant cannot properly review the situation nor defend as the rules of ethics would require. Assuming counsel for Defendant Wolpoff and Abramson, LLC, has indeed performed their due diligence, these documents must be already in the possession of defense counsel in their St. Louis office. In fact, two such documents not produced in Initial Disclosures, were used by Defendant's counsel in their deposition of Plaintiffs. Plaintiffs request that these documents be made available for inspection and copying at the office of Defendant's counsel.

**Objections as to Relevancy**

During the course of discovery, Plaintiffs served Interrogatories and Requests for Production on Defendant Wolpoff & Abramson, LLP. These requests sought information

pertaining to Plaintiffs and the issues in this lawsuit. As you will see outlined below, Wolpoff made numerous objections to these requests, claiming the requests were "overbroad, unduly burdensome, and not likely to lead to discoverable information," although in some instances, they made a cavalier one sentence response.

Plaintiffs contend that Wolpoff's responses contain improper objections which should be stricken, the responses are non-responses designed to thwart discovery, and that Defendant should be compelled to provide proper responses.

The Defendant, Wolpoff & Abramson, L.L.P., objected to the following interrogatories and requests to produce documents as overbroad, unduly burdensome, irrelevant and not likely to lead to discoverable information and refused to answer. (Emphasis added).

> Identify and describe any documents used to describe, record or establish Defendant's methods and techniques to be used in the collection of consumer accounts. (Interrog. # 1).
>
> List and explain all abbreviations and codes, letters, numerals, or symbols regularly used by Defendant in its records or collection activities. (Interrog. # 4).
>
> Describe the maintenance of all procedures utilized by the Defendant to avoid violation of the Fair Debt Collection Practices Act. (Interrog. # 9).
>
> Identify by caption, court, civil action number and result all litigation filed against the Defendant alleging violations of the Fair Debt Collection Practices Act. (Interrog. # 10).
>
> Set out herein a detailed description including the date of the charge and the nature of the charge imposed on the credit card or credit card account(s) all in a chronological sequence on the account as subject of this cause of action. (Interrog. # 15).
>
> All material, including video and audio tapes, pertaining to training by or for the Defendant and its employees or agents regarding the Fair Debt Collection Practices Act. (Request to Produce # #). (Defendant also added objection that this request was intended to harass.)
>
> An organizational chart for Defendant. (Request to Produce # 4).

> Copies of any litigation filed against the Defendant alleging violations of the Fair Debt Collection Practices Act. (Request to Produce # 6).
>
> A list of all employees engaged in the collection of debts such as the debt Plaintiffs allegedly owe, their positions and responsibilities. (Request to Produce # 7).
>
> All operation manuals or similar documents, etc., utilized by the Defendant. (Request to Produce # 13).
>
> All documents relating to the maintenance of procedures by the Defendant adapted to avoid any violation of the Fair Debt Collection Practices Act. (Request to Produce # 14).
>
> Any and all collection manuals, all written procedural instructions and regulations regarding collection activities, all documents, records, books and manuals pertaining to collection procedures and practices utilized by the Defendant. (Request to Produce # 17).
>
> Any and all computer programs, manuals, programming guides, programming instructions, or other guidelines implemented by the Defendant concerning, relating or pertaining to collection procedures implemented by the Defendant with respect to the computers used in the collection process. (Request to Produce # 18).
>
> All documents, records, and memoranda evidencing or relating to any and all training materials for collectors, including pamphlets, brochures, texts, manuals, and any other document, item or thing used in the training, monitoring and supervision of telephone collection personnel. (Request to Produce # 19).
>
> Copies of any and all policies, handbooks or manuals used to train employees or agents in the following departments: Fraud, Customer Service, Phone (however designated), Collections, Debt Management, Account Manager and the phone department manuals for the office of the Vice-President. (Request to Produce # 20).

There is no such objection, “not likely to lead to discoverable information.” Discovery need only be “reasonably calculated” to lead to the discovery of admissible evidence. Fed. R. Civ. Pro 26(b)(1). The interrogatories reasonably propounded by Plaintiffs were not ‘fishing expeditions’ looking for information that might lead to other information. Plaintiffs were

seeking to learn about the very procedure that Defendant claims to follow to avoid violations of the Fair Debt Collection Practices Act.

Wolpoff has defended its practices herein, and in its answers, claims bona fide error as an affirmative defense. Its answer cites the applicable statute 15 U.S.C. § 1692k(c), the subsection that clearly defines bona fide error:

> "…if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." (Emphasis added.)

In order to prevail on the bona fide error defense, the Defendant must show that they had a procedure in place, that it was reasonably adapted to avoid the error, and that it was maintained. Each interrogatory and request for production of document described above asks the Defendant to meet that burden. Therefore, the requests are not overbroad, or irrelevant, and in fact they seek information that the Defendant will be required to produce at trial in order to prevail on this affirmative defense.

**Incomplete Answers with Objections**

The same objections were made to the following requests, although in each case a deficient attempt was made to answer.

> Identify the attorney(s) retained by Defendant in Missouri to file collection suits and the courts in Missouri in which Defendant has initiated law suits from January 1, 2004, to the present. (Interrog. # 7).

> Provide the name, the address, job title and last known address of the head of each of the following departments: collections, customer service, accounts managers, fraud, debt management service, customer communications, and customer service representative training. (Interrog. # 13).

> State the legal name; assumed, fictitious, business, or professional name; home address; home and cell telephone numbers; five-year work history; date of birth; and gender of all natural persons who attempted to collect or assisted one or more

other persons in attempting to collect (including any skiptracing activities) the account. (Interrog. # 16).

All documents relating to the alleged debt of Plaintiffs and the collection thereof. (Request for Production # 1).

All documents relating to Defendant's activities to collect debts such as Plaintiffs'. (Request for Production # 2).

The credit card agreement relating to the alleged debt of Plaintiffs. (Request for Production # 8).

All amendments, "bill stuffers," riders, or other documents that modify or affect the credit card agreement relating to the alleged debt. (Request for Production # 9).

Copies of and originals of all charges, credit applications, credit authorizations, charge slips, purchase authorizations, or any of the documents by which Defendant asserts that the Plaintiffs are in any way responsible for the indebtedness for which they continue to write on and/or report as delinquent. (Request to Produce # 23).

Copies of each and every note, be it computer-generated, handwritten, orally recorded, or part of a computer screen, noting each and every communication which in anyway references notes or documents regarding the Plaintiffs or the account made the basis of this lawsuit. (Request to Produce #23).

Copies of any and all reports or communications made by the Defendant to any other person or entity concerning the account of Plaintiffs, and/or the credit history or payment history of Plaintiffs. (Request to Produce #26).

To these requests, Defendant objected and would only reveal that Kramer & Frank was retained by MBNA for state court enforcement. The response does not indicate if there are any others acting in Missouri on their behalf. Defendant objected to providing the identities of any departments head as requested, but instead responded with the names of the managing partner and director of legal compliance. And rather than identify the persons directly responsible for making the calls, sending the letters, arranging the arbitration, serving, etc. as to the Plaintiffs, it

merely restated the name of their managing partner. Plaintiffs doubt that Mr. Abramson himself was directly involved in the incidents complained of herein.

In several instances above, Defendant claimed that copies of documents provided over objections were attached, and in no instance was that true. Plaintiffs have made several attempts to request copies of the documents allegedly included in Defendant's responses, to no avail.

Defendant has objected to providing information underlying the account it claimed Plaintiff owed. It is completely relevant to determine if Defendant was indeed collecting on a legitimate debt. If they were not, that is an additional violation of the Fair Debt Collection Practices Act.

Once again, the above requests relate not only to the allegations made by the Plaintiffs herein, but also to Defendant's affirmative defenses, and are therefore relevant. Defendant's objections should be stricken and it should be ordered to produce complete and accurate responses.

**Work product/attorney-client privilege**

In several instances, Defendants objected not only with the boilerplate "overbroad, unduly burdensome, irrelevant and not likely to lead to discoverable information," but with the claim that the information was protected by the attorney-client privilege and/or work product doctrine. Defendant objected in this way to the following:

> Describe Your process for filing arbitrations to collect consumer accounts, including the identity of Defendant's employee(s) who make(s) or approve(s) the decision to file for arbitration, at what point in Defendant's collection process the decision to arbitrate was made, what criteria and policies are used in deciding whether to arbitrate (e.g., minimum dollar amount, distance of consumer from Defendant's office, contingency of claim, debtor's assets, defenses to claim) and identifying any documents discussing such criteria and policies in use by Defendant since 2003. (Interrog. # 5)

Describe Your process for filing lawsuits to collect consumer accounts, including the identity of Defendant's employee(s) who make(s) or approve(s) the decision to file suit or to request an attorney to file suit, at what point in Defendant's collection process the decision to sue is made, what criteria and policies are used in deciding whether to sue (e.g., minimum dollar amount, distance of consumer from Defendant's office, contingency of claim, debtor's assets, defenses to claim) and identifying any documents discussing such criteria and policies in use by Defendant since 2003. (Interrog. # 6).

All documents between Defendant and MBNA regarding the Plaintiffs and collection of this alleged debt. (Request for Production # 5). (Defendant also once again claimed some documents were nonetheless attached, but they were not).

The original file, and any and all documents, including, but not limited to, the original file, original file folder, all computer records, computer printouts, all memoranda, statements, letters, notations, reports, reports of telephone calls, records of all calls, ledger cards, account cards, or other written memoranda, all communications, tape recordings, electronic recordings, transcripts of all tape recordings, in Defendant's file relating to an alleged account of Plaintiffs. (Request for Production # 16).

Copies of any and all documentation regarding the Plaintiffs' account indebtedness and any responsibility the Plaintiffs may have on the account. (Request for Production # 21).

Copies of the entire and complete investigation as to Plaintiffs' account indebtedness and any responsibility the Plaintiffs may have on the account. (Request for Production # 22).

Copies of each and every note, be it computer-generated, handwritten, orally recorded, or part of a computer screen, noting each and every communication which in anyway references notes or documents regarding the Plaintiffs or the account made the basis of this lawsuit. (Request for Production # 24).

Copies of any and all reports or communications made by the Defendant to any other person or entity concerning the account of Plaintiffs, and/or the credit history or payment history of Plaintiffs. (Request for Production # 26).

The party seeking to assert a privilege has the burden of establishing its applicability. Motley v. Marathon Oil Company, 71 F.3d 1547, 1150 (10th Cir. 1995). The Court has held, "A litigant may not use the attorney client privilege as both a sword and a shield, disclosing only

those communications which are beneficial to the litigant's defense. Kansas Food Packers v. Corpak, 2000 WL 33170870 (D.Kan., 2000). "The policy of the privilege is to protect confidential attorney-client relationships only to the extent that the injury the relationship would suffer from disclosure is greater than the benefit to be gained thereby. Hearn v. Rhay, 68 F.R.D. 574, 582 (E.D. Wash., 1975). "When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Federal Rules of Civil Procedure 26(b)(5).

If in fact Defendant withheld discovery on the above-mentioned grounds, it must produce a log detailing all such documents. The log should conform to the guidelines set forth in the Federal Rules of Civil Procedure. See, e.g., Federal Rules of Civil Procedure 26(b), advisory committee notes to 1993 amendments, "the party must provide sufficient information to enable other parties to evaluate the applicability of the claimed or protection". Trevino v. ACB American, Inc., 232 F.R.D. 612, 617 (N.D. Cal. 2006).

Further, to "facilitate its determination of privilege, a court may require 'an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps.'" United States v. Construction Products Research, Inc., 73 F.3d 464. If, "the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected." Id at 473.

As to each of the responses to which a privilege is asserted, no factual basis is offered, either in the form of a privilege log or as requested in the instructions with each request. Please

provide the required information for asserting any privileges, accordingly, or withdraw the objections on those grounds.

**Incomplete Answers**

Defendant did not object to every request, but several of those it did answer without objection are patently incomplete. Those requests, Defendant's responses and why those responses are inadequate are as follows:

Plaintiffs asked, "Describe the procedures used to ensure that agents or third parties used by Defendant comply with the Fair Debt Collection Practices Act." (Interrog. # 11). Defendant's entire answer with regard to its agents was: "Wolpoff & Abramson, L.L.P. requests that its agents adhere to the Fair Debt Collection Practices Act where applicable." That response utterly fails to describe ANY procedure, reasonable or otherwise, that would justify excusing conduct as unintentional or as the result of bona fide error.

Plaintiffs asked in Interrogatory Number 14, "State the names, addresses, telephone numbers and places of employment of all persons who have factual knowledge regarding the facts and circumstances involving this lawsuit." Defendant responded with the names and addresses of the managing partner and legal compliance officer. They did not identify the individuals that spoke to the Plaintiffs or anyone else calling on Plaintiffs' behalf. Letters were written, the computer record was made, but Defendant's response would indicate that Wolpoff & Abramson is a two person operation, wherein the entire business of collecting debts is handled personally by a "managing" attorney and a "legal compliance" officer.

Plaintiffs asked that Defendant describe the system used to record contacts by its employees with consumers or third parties in connection with the collection of consumer accounts, and Defendant's policies for operating such a system. (Interrogatory Number 2).

Defendant responded that they maintain “a computer system within which notes regarding contacts with consumers are entered contemporaneously as the events occur.” The system is simply not described.

Plaintiffs asked that Defendant describe the use of process servers, including “…how You select process servers, Your criteria for the process server, instructions to the process servers, and problems You have had with process servers serving on Your behalf.” Defendant only stated that they “…contracts with Process Forwarding International (“PFI”) for its services as a process server company. Wolpoff and Abramson, L.L.P. forwarded an arbitration claim for Plaintiff to PFI to perfect service, which was served on July 9, 2005 according to PFI’s records.” A significant issue in the instant case is whether Defendant Wolpoff & Abramson, LLP instructed the process server to seek any information that might be used to collect a debt. The actual language of the contract referred to is important. From other sources, Plaintiffs have learned that it has become common practice for process servers to be instructed to ask for telephone numbers, names of other residents in the home, and for financial or asset information. Plaintiffs seek to determine whether that was the situation in this particular instance.

**Request for Admissions**

Defendant’s attitude to Plaintiff’s discovery requests is summed up effectively in its answer to Request Number 2. When asked to admit it was making collection calls to Plaintiffs during the month of November, 2004, (Request Number 2), it responded,

> “Defendant is without sufficient information to admit or deny this request because the term “collection calls” is not defined. As such, said request is denied.”

Wolpoff attempts to evade answer by making a specious claim that they do not know the meaning of "collection call." However, because Wolpoff has no other reason to call Plaintiff, it stands to reason that any call made by Wolpoff to Plaintiffs would be a collection call.

**Conclusion**

A Defendant cannot avoid responding to discovery by "simply inton[ing] this familiar litany" that a discovery request is overly broad, burdensome, or irrelevant. Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296 (E.D.Pa. 1980). In Roesberg, the Court expressed it is the burden to the Defendant to prove how each question is overly broad or burdensome. Defendants have not sought a protective order, or otherwise acknowledged their burden to prevent the discovery responses.

Because the Defendant cannot sustain its burden of proof as to any of its boilerplate objections, Plaintiffs' Motion to Compel should be granted and Defendants objections should be stricken and Defendants shall be required to comply with all of Plaintiffs' discovery requests.

Respectfully submitted,

/s/ Debra K. Lumpkins
Debra K. Lumpkins, E.D.Mo. # 502756
Gateway Legal Services, Inc.
Attorneys for Plaintiffs
200 N. Broadway, Suite 950
St. Louis, MO 63102
(314) 534-0404; Fax: 652-8308
dklumpkins@gatewaylegal.org

Certificate of Service

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of the Court this 18th day of October, 2006, to be served by operation of the Court's ECF System.

/s/ Debra K. Lumpkins
Debra K. Lumpkins